IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MONTRELL JORDAN                                              PETITIONER

VS.                                    CIVIL ACTION NO  3:09cv544-DPJ-FKB

CHRISTOPHER EPPS, et al.                                    RESPONDENTS


## REPORT AND RECOMMENDATION

Montrell Jordan was tried and convicted in Holmes County Circuit Court of

depraved heart murder.  His conviction was affirmed on direct appeal, and the Mississippi

Supreme Court denied his application for post-conviction relief.  He now seeks federal

habeas relief pursuant to 28 U.S.C. § 2254.  Having considered the petition, the response,

and the state court record, the undersigned recommends that habeas relief be denied and

the petition be dismissed with prejudice.

## I.  Facts and Procedural History

On the evening of April 27, 2005, Holmes Community College in Goodman,

Mississippi, held its annual "Spring Fling" dance in the student union building.  Attending

the dance, in addition to students, were eight young men from Pickens, Mississippi, one of

whom was Montrell Jordan.  During the dance, a fight broke out between the Pickens

group and some of the college football players.  When the security guard tried to break up

the fight inside the building, the participants went outside and continued the altercation.

Two gunshots were fired, and Dwaeuntre "Dee Dee" Davis, a Holmes football player, was

killed.  Witnesses saw the shooter run to a vehicle and drive away.

After talking with witnesses at the scene, law enforcement authorities identified Jordan as a suspect.  They went to his home that same evening and arrested him for murder.  Shortly after midnight Jordan gave a recorded statement.  Later in the morning he gave a second statement, which was also recorded.  In the statements, Jordan said that he had been at the party when a fight broke out, that someone had started shooting, and that he had jumped into his truck and left.  Jordan denied owning a gun.

A Holmes County grand jury indicted Jordan of the crime of murder.  In February of 2007 Jordan was tried, convicted, and sentenced to a term of life.  His conviction and sentence were affirmed on direct appeal, *Jordan v. State*, 995 So. 2d 94 (Miss. 2008), and post-conviction relief was denied.  He now seeks a writ of habeas corpus based upon the following grounds:[1]

1. Jordan's right to a fair trial was violated because voir dire was inadequate to reveal juror prejudice.

2. The jury panel was prejudiced by pretrial publicity and community sentiment, and this prejudice caused the jurors to reach a verdict not supported by the evidence.

3. The trial court erred in failing to grant a mistrial after observing that four jurors were unable to fairly and impartially consider the evidence.

4. The evidence was insufficient to support the verdict.

---

[1]Petitioner numbered his grounds for relief one through twenty-six in the petition, and the undersigned has retained Petitioner's numbering herein.  However, the petition does not use any numbering or lettering system for the specific allegations of ineffective assistance set forth in ground nineteen.  For clarity, the undersigned has added letters to identify Jordan's ineffective assistance claims, combining claims where appropriate.

5.     Jordan's right to a fair trial was violated by the trial court's allowing witnesses to make in-court identifications of Jordan without a proper foundation.

6.     The trial court erred in admitting Jordan's unsigned statements into evidence.

7.     The trial court erred in admitting into evidence the items seized during a search of Jordan's vehicle.

8.     Jordan's rights were violated by the trial court's denial of his motion for a new trial.

9.     The trial court erred in failing to require the state to amend the indictment to charge only manslaughter.

10.     The prosecutor made inflammatory and improper remarks during the trial.

11.     The trial court erred in admitting prior statements of prosecution witnesses.

12.     The trial court erred in admitting photographs of the victim into evidence.

13.     The trial court erred in admitting into evidence the photo line-up used to identify Jordan.

14.     The trial court erred in admitting ballistics evidence.

15.     The trial court erred in admitting hearsay, opinion testimony, and other inadmissible evidence.

16.     Jury Instruction No. 3 was confusing and did not clearly instruct the jury on the applicable law.

17.     The trial court erred in giving Jury Instruction No. 4.

18.     The trial court erred in giving Jury Instruction No. 5.

19.     The following actions or inactions on the part of Jordan's trial counsel constituted ineffective assistance:

    A.     Failure to disclose a conflict of interest.

    B.     Failure to disclose that one of his attorneys had engaged in unethical activity.

3

C.   Failure to investigate, to interview eyewitnesses, to obtain exculpatory evidence, and to call Randy Scott, James P. Oliver and Patrick Day as witnesses.

D.   Failure to make an argument of innocence.

E.   Failure to call Jordan to testify.

F.   Failure to investigate and call character witnesses.

G.   Failure to conduct pretrial discovery and to file motions to obtain documents, including witness statements.

H.   Failure to object to improper remarks by the prosecutor.

I.   Failure to adequately communicate with Jordan prior to trial.

J.   Failure to file a motion for a change of venue.

K.   Failure to conduct proper voir dire and to move to strike the venire or the jury panel or move for a mistrial or change of venue because of disqualification of members of the panel.

L.   Failure to object to the admission of witness statements and other inadmissible evidence.

M.   Failure to adequately brief and argue the motion to suppress and to renew objections during the course of the trial.

N.   Failure to object to admission into evidence of the cartridges recovered in the search of Jordan's car and to argue that they did not match the bullet recovered from the victim.

O.   Failure to adequately cross-examine the state's witnesses.

P.   Failure to offer an adequate jury instruction on the elements of manslaughter and to offer a self-defense instruction.

Q.   Failure to move for a mistrial based upon emotional outbursts of jurors.

R.   Failure to object to the admission of an unsigned third-party statement of Jordan.

S.   Failure to move for a mistrial because of discovery violations by the prosecution.

T.   Failures to object to the in-court identification of Jordan by Shaghana Simpson, John Newton, Lacarus Oliver, Terry Wade, Carlton Brown, and Joey Netherland.

U.   Failure to object to Simpson's testimony regarding a gun.

V.   Failure to object to admission of photographs of Jordan's vehicle.

W.   Failure to object to the admission of hearsay statements by Simpson through Officer Wilson's testimony.

X.   Failure to object to Wilson's hearsay testimony regarding the search of Jordan's vehicle.

Y.   Failure to object to testimony by John Newton that was not based on direct knowledge.

Z.   Failure to object to admission of documents during Byron Meredith's testimony.

AA.  Failure to object to testimony by David Whitehead concerning gunshot residue.

BB.  Failure to object to hearsay testimony by A.C. Hankins concerning the gunshot residue test.

CC.  Failure to object to ATF documents on the basis of improper authentication.

DD.  Failure to object to the admission of Wade's prior statements.

EE.  Failure to object to Jury Instructions Nos. 3, 4 and 5.

FF.  Failure to move to quash or object to the indictment or to move to amend the indictment.

GG.  Failure to object to admission of the holster, bullets, blue jeans, white t-shirt, firearms report and ATF trace form.

HH.  Failure to move for a protective order regarding Defendants' statements or to object to their admission.

II.      Failure to move to reduce the charge from murder to manslaughter after the defense's motion for a directed verdict was denied.

JJ.      Failure to properly argue the motion for directed verdict.

20.    Cumulative error.

21.    The appellate court erred in refusing to consider newly-discovered evidence regarding a conflict of interest between the lead defense attorney and the chief prosecution witness.

22.    The appellate court erred in failing to consider newly-discovered eyewitness evidence exonerating Jordan.

23.    The appellate court failed to consider newly-discovered evidence regarding Jordan's defense attorney.

24.    The appellate court failed to consider newly-discovered evidence from jurors as to why they voted to convict Jordan.

25.    The appellate court failed to consider newly-discovered evidence of self-defense and/or manslaughter.

26.    The appellate court failed to consider newly-discovered evidence concerning the ineffectiveness of defense counsel.

## II. Evidence Presented at Trial

Joey Netherland was a security guard working at the Spring Fling dance on April 27, 2008.  At trial, he testified that when the fight began inside the student union building, known as the Canteen or "Can," he attempted to stop it, but that the participants went outside and continued to fight.  Netherland was still trying to control the situation when he heard a gunshot, looked up, and saw the shooter fire a second shot.  Netherland followed the shooter, who ran and got into the driver's seat of a tan Chevrolet Suburban.  When Netherland ran in front of the vehicle to try to stop the shooter from escaping, the Suburban drove around him and left the campus.  Netherland saw a partial tag number on

the vehicle, which he provided to authorities. He later identified Jordan from a photo line-up, and at trial Netherland made an in-court identification of Jordan.

Two additional key witnesses for the prosecution were Holmes Community College students Shaghana Simpson and Carlton Brown. Simpson knew the victim, Jordan, and some of Jordan's companions. She testified that she saw the flash from the second gunshot and saw the shooter run to the driver's side of a Suburban and a light come on inside the vehicle. The vehicle then left at a high rate of speed. According to Simpson, the shooter was wearing a white t-shirt and jeans. Simpson could not testify that she saw Jordan fire the shot or that the person whom she saw running away was Jordan. She did indicate, however, that Jordan owned a tan Suburban, which she had been inside, and that the fleeing vehicle matched this description. Simpson, who had been in Jordan's vehicle, testified that Jordan kept two guns in his vehicle, that she had seen a gun under the seat, and that Jordan had told her it was a .357.

Carlton Brown, a football player at the college, testified that he was involved in the fight and was good friends with the victim. The shooter, whom Brown did not know, was standing next to him when the shots were fired. Brown identified Jordan from a photo lineup and made an in-court identification of him as the gunman.

The first responders to the scene included Officers Kenny Wilson and John Newton of the Holmes County Sheriff's Department. Wilson testified that he was acquainted with Jordan, and that after talking with Simpson and Netherland, he and Newton headed to Jordan's home in Pickens. On the way, they called Officer Fred Coates with the Pickens Police Department, who joined them. When the officers arrived, Jordan's father answered the door. The officers placed Jordan under arrest, took the keys to Jordan's Suburban,

which was parked behind a shed behind the house, and performed a search of the vehicle.  The search yielded a leather holster and four cartridges.   When asked for the clothing Jordan had worn to the dance, Jordan's father produced a white t-shirt and jeans.

Jordan's first interview was conducted shortly after midnight at the Sheriff's Department by Officer Sam Chambers.  Jordan stated that during the dance at the Canteen, a fight broke out.  When someone began shooting, Jordan jumped into his truck, went home and took a bath.  He and his father got into a disagreement, and then the officers arrived.  Jordan denied any involvement in the fight at the college.   He also denied owning a gun.  A second interview was conducted on the morning of April 28, 2005, by Lacarus Oliver with the Mississippi Bureau of Investigation.  In this statement, Jordan again denied involvement in the shooting and denied owning a gun.

The defense called only one witness, Arlena Shaw.  Shaw had been a student at Holmes Community College at the time of the shooting and was at the dance.  She testified that when the fight began, someone sprayed mace inside in the Can, and everyone ran outside, where the fight continued.  Shaw knew the victim and was standing near him when she heard shots and saw someone shooting.  She described the shooter as having a small build, of average height, having short hair, and wearing a white t-shirt and black shorts.  After firing the shots, the gunman ran and got into a silver Kia Sephia. Shaw stated that she would not be able to identify the shooter.

### III. <u>Analysis</u>

### A. **Procedurally-barred Claims**

Grounds 2, 3, 5, 10, 11, 16, 17, and 18 were presented to the state court on direct appeal and were rejected as procedurally barred.  Where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   A procedural rule is "adequate" if it is regularly and consistently applied.  *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988); *see also Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995) ("An `adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims").   A state procedural rule is presumed to be adequate when the state court expressly relies upon it in denying collateral relief.  *Lott v. Hargett*, 80 F.3d 161, 65 (5th Cir. 1996); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

Jordan has made no allegation or argument in his habeas petition that the procedural bars relied upon by the state courts were inadequate to support the rejection of these claims; neither has he made any showing as to the cause of his defaults, actual prejudice as a result of the alleged constitutional violations, or that failure to address the merits of these claims will result in a miscarriage of justice.  Accordingly, the undersigned concludes that the state court's holding that these claims were procedurally barred precludes consideration of their merits.

Several of Jordan's ineffective assistance claims--those designated above as U, V, W, X, AA, BB, CC, DD, JJ, and a portion of GG--have never been presented to Mississippi's highest court.  However, Jordan no longer has any avenue available by which to pursue these claims in state court:  He has completed both the direct review process and the post-conviction relief process, and none of these claims falls into any exception to the prohibition set forth in Miss. Code Ann. § 99-39-27(9) on the filing of successive petitions for post-conviction relief.  Thus, Jordan has technically exhausted his state court remedies on these claims, and because they would now be procedurally barred in state court, this court may not review their merits.  *See Sones,* 61 F.3d at 415.

### B.  Vague, Conclusory and Non-cognizable Claims.

As indicated *supra*, Jordan has attempted to assert a multitude of claims in his petition.  However, a great number of these have been pled in a vague or conclusory fashion.  Rule 2 of the Rules Governing Section 2254 Cases requires that a petitioner set forth the facts supporting each ground for relief.  "'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Rule 4, Rules Governing Section 2254 Cases, Advisory Committee Notes; *see also McFarland v. Scott*, 512 U.S. 849, 860 (1994) ("habeas petition, unlike a [civil] complaint, must allege the factual underpinnings of the petitioner's claims") (O'Connor, J., concurring in the judgment in part).

Jordan is represented by counsel in this action.   While *pro se* habeas petitions are construed liberally, no such latitude is afforded to petitions prepared by counsel.  *Woodfox v. Cain,* 609 F.3d 774, 792 (5th Cir. 2010).  A habeas petitioner represented by counsel cannot merely make "drive-by" allegations of constitutional violations, without an

explanation of the underlying facts (and citations to the record when appropriate), and expect a court to explore the trial court record or his state court filings to determine the specifics of his claims. Jordan's pleading of his ineffective assistance claims is particularly deficient. In ground 19 of the petition, Jordan states that he received ineffective assistance of counsel at trial and then goes on to give, as his supporting facts, a list of approximately fifty separate incidents of alleged ineffective assistance. Most of the items in this list consist of only short phrases; only a couple are accompanied by any discussion of specific facts, and none include citations to the record or a discussion of the applicable law. Furthermore, Jordan has not affirmatively specified how he was prejudiced by these alleged failures on the part of counsel. *Bridge v. Lynaugh,* 838 F.2d 770, 773 (5th Cir. 1988) (habeas petitioner must affirmatively plead prejudice in his petition). For these reasons, this court would no doubt be justified in failing to give consideration to many of Jordan's grounds for relief, including most, if not all, of his claims of ineffective assistance of counsel.

Nevertheless, in an abundance of caution, the undersigned has considered all of Jordan's otherwise-reviewable claims which were discussed by the Mississippi Supreme Court in his direct appeal. This approach, while not necessarily required, seems reasonable in light of the fact that this court's review under § 2254(d) is really a review of the state court's determination of those claims. As to Jordan's ineffective assistance claims-–claims which were presented for the first time in his post-conviction application and which were denied summarily by the state supreme court-–the undersigned has reviewed Jordan's state-court post-conviction filings in order to glean more details

concerning them.  Those which the undersigned believes to merit consideration are included in this report and recommendation.

Jordan argues in ground 7 of the petition that the trial court erred in admitting evidence seized in violation of the Fourth Amendment.  Fourth Amendment violations generally do not provide a basis for federal habeas relief.  In *Stone v. Powell,* 428 U.S. 465, 482 (1976)*,* the Supreme Court held that a state prisoner is not entitled to habeas relief based upon the admission of evidence seized in violation of the Fourth Amendment if the state has provided an opportunity for full and fair litigation of the Fourth Amendment claim.  Jordan raised his Fourth Amendment issue on direct appeal, where it was considered and rejected.  Thus, he was given the requisite full and fair opportunity in the present case.  For this reason, habeas review of ground 7 is precluded.

In ground 8, Jordan contends that his conviction was against the weight of the evidence.  This allegation fails to state a cognizable ground for habeas relief.  *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Grounds 21 through 26 allege error by the Mississippi Supreme Court in its review of various claims.  Appellate error does not provide a basis for habeas relief.  Rather, the statements in these "grounds" merely constitute arguments in support of claims set forth elsewhere in the petition, and the undersigned has considered them as such when appropriate.

All grounds not addressed in this report and recommendation have been rejected as either so vague or conclusory as to not merit discussion.

### C.  Claims Reviewable on the Merits

***Standard of Review***

Petitioner's remaining claims were previously presented to and adjudicated on the merits by the Mississippi Supreme Court within the meaning of 28 U.S.C. § 2554(d), either on direct appeal or in his post-conviction proceeding. They are therefore subject to the highly deferential standard of review set forth in 28 U.S.C. § 2254(d), which allows habeas relief in this case only if the state courts' rejection of his claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, . . . or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*[2] The Supreme Court has repeatedly emphasized that "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* (quoting *Williams*, 529 U.S. at 411). Rather,

---

[2]A state court decision is "contrary to" clearly established Supreme Court precedent if it applies a rule that contradicts governing law or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result which differs from Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). A state court decision falls under the "unreasonable application" clause where the state court correctly identifies the governing legal rule but applies it unreasonably to the facts of a prisoner's case. *Id.* at 407-08. The latter situation tends to be much more common than the former, undoubtedly because identifying the correct legal principle tends to be easier than applying that principle to a given set of facts, and because cases involving facts "materially indistinguishable" from the facts of a Supreme Court case are rare. The state court decisions at issue herein do not involve the state court's failure to identify the applicable principle, nor do they involve "materially indistinguishable" facts. Therefore, the applicable analysis of questions of law in the present case is under the "unreasonable application" clause.

13

the application must be not only incorrect, but also "objectively unreasonable." *Id.*

(quoting *Williams*, 529 U.S. at 409).   Where a federal habeas court concludes that a

constitutional violation did occur, it must go on to ask whether any arguments supported,

or *could have supported*, the state court's rejection of the claim, and whether it is possible

that fairminded jurists could disagree as to whether the state court's decision is

inconsistent with a prior United States Supreme Court decision. *Harrington v. Richter*,

131 S.Ct. 770, 786 (2011).  Habeas relief is available only where the petitioner establishes

"that the state court's ruling on the claim being presented in federal court  was so lacking

in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The standard of review for ineffective assistance claims previously adjudicated on

the merits is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Analysis of ineffective assistance claims begins with the test set forth in *Strickland v.*

*Washington*, 466 U.S. 668 (1984).  Under *Strickland's* familiar two-prong analysis, a

petitioner must first show that his attorney's performance was deficient.  466 U.S at 688.

"Deficient" means that counsel's performance was "outside the wide range of

professionally competent assistance." *Id.* at 690.  If a petitioner succeeds in establishing

deficiency on his counsel's part, then he must go on to demonstrate that his attorney's

deficient performance prejudiced the defense such that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694.  The standard of review of an attorney's performance is "highly

deferential," and a court considering an ineffectiveness claim is to "indulge a strong

presumption that counsel's performance falls within the wide range of reasonable

professional assistance." *Id.* at 689. But the difficulty faced by a habeas petitioner in seeking to establish a claim of ineffective assistance is compounded when the claim is viewed through the lens of § 2254(d). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter,* 131 S.Ct. at 788.

In short, a habeas petitioner's burden of overcoming the deferential standard of review is an extremely difficult one; the burden only increases where a petitioner is asserting ineffective assistance claims.

***Voir Dire, Jury Panel and Jurors (Ground 1)****.* Ground one of the petition raises several issues concerning the jury panel, the jurors who were seated, and the voir dire of prospective jurors. The unifying premise of all the juror issues raised by Jordan is that community prejudice against Jordan was intense because of the central role Holmes Community College and its football team played in Holmes County.

Jordan contends that his right to a fair trial was violated by the inadequacy of voir dire to reveal juror bias and prejudice. He points out that no one questioned the jurors about pretrial publicity, community concern, or their associations with the community college. But, as the Supreme Court has observed, "the State's obligation to the defendant to impanel an impartial jury generally can be satisfied by less than an inquiry into a specific prejudice feared by the defendant." *Ristaino v. Ross*, 424 U.S. 589, 594 (1976). The Supreme Court has required voir dire on specific areas of prejudice only when the circumstances suggested a significant likelihood that such prejudice would infect the trial.

*See id* at 598.[3]   The record in the present case contains nothing to indicate that Jordan's

right to an impartial jury required further questioning concerning community opinion or

prejudice.  Indeed, a review of the record and the voir dire that was conducted  refutes

Jordan's assumption that community awareness of the facts of the case was widespread.

Although the size of the jury panel is not explicitly stated in the record, careful review of

the transcript of voir dire and jury selection indicates that at least 59 prospective jurors

were the subject of voir dire.  All were questioned as to whether they had heard anything

about the facts of the case.  The transcript indicates that only six prospective jurors

initially responded in the affirmative.   One stated that "everybody" had heard about the

case.  These individuals were questioned as to whether they had formed an opinion, and,

and if so, whether they could lay that opinion aside.  They were also asked whether they

could lay aside what they had heard about the case.  Three stated that they had not

formed an opinion and could lay aside what they had heard; three others admitted that

they had formed an opinion and could not lay it aside, although one of these latter three

subsequently stated that she believed that she could lay aside what she had heard.[4]

Defense counsel's voir dire revealed two additional jurors who admitted having heard

about the facts of the case.  One of these two said that he had read about the case in the

---

[3]For example, in *Ham v. South Carolina*, 409 U.S. 524 (1973), the Supreme
Court reversed the conviction of a black defendant where the trial court had failed to
question prospective jurors concerning racial bias.  The defendant was well-known as
a civil rights activist, and his defense was that he had been framed on a narcotics
charge by law enforcement officials in retaliation for his activism.  The Supreme Court
held that under the circumstances, the defendant was denied a fair trial when the trial
court failed to specifically question prospective jurors as to possible racial prejudice.

[4]This individual had heard about the case in the course of her work as a part-
time correctional officer for the Holmes County Sheriff's Department.

16

college's alumni newsletter and in the newspaper, and he affirmed that he could be fair and impartial. The other, a woman who knew the victim's parents and whose daughter was at the Spring Fling dance, stated that "everybody here has heard about the case." Obviously, the shooting was no secret in the community, and no doubt many of the residents of Holmes County had heard something about it. But the responses of the jurors did not suggest widespread community outrage and prejudice.

Furthermore, the trial court thoroughly questioned the venire as to any reasons that they might not be able to be fair and impartial, and the judge informed the venire that they were to ignore outside information they had gained about the case. Defense counsel followed up with questions to individual jurors at the bench concerning their knowledge of the case and whether they could be impartial. As the state supreme court observed in its rejection of this claim, defense counsel was not restricted in conducting voir dire, never moved to quash the venire, and did not object to the jury that was impaneled. In short, there is nothing to support a claim that Jordan's right to a fair trial was violated by insufficient voir dire.

Also included in ground one is an allegation that four of the jurors who served were not qualified to do so. Jordan contends that two jurors–Loretta McGee and Curtis Moore–were biased against him. He presented this argument to the trial court in motion for a new trial, and it was rejected. The trial court's ruling was affirmed on direct appeal.

Jordan's allegation of bias regarding McGee, as stated in his state-court filings, centers around the trial court's individual voir dire of her. The trial court conducted follow-up voir dire in chambers after McGee indicated she knew Jordan's family. McGee confirmed in chambers that some of her family members were close friends with some

17

members of Jordan's family but stated that these relationships would not affect her ability to be fair and impartial.  Jordan apparently argued to the state trial court that the in-chambers voir dire pressured McGee to vote for a conviction; however, he offered no support from the record or otherwise for this assertion.

Curtis Moore, a retired police officer, served as the foreperson of the jury.  Moore had previously been a party to a dispute with Petitioner's father, Walter Jordan, concerning a collision between Moore's Mercedes and a cow of disputed ownership.  Walter Jordan discovered that Moore was on the jury after the trial commenced but failed to communicate the fact to defense counsel; it was first disclosed to the trial court in Jordan's post-trial motion for a new trial.

Whether a juror is biased is a question of fact.  *E.g.*, *Virgil v. Dretke*, 446 F.3d 598, 610 n. 52 (5th Cir. 2006).  Thus, under § 2254(d), this court's review of Jordan's allegation of juror bias is limited to whether the state court's rejection of the claim was reasonable in light of the evidence presented to the state court.   Jordan offered no evidence to the state court in support of his claim regarding McGee.  The only evidentiary support offered for the claim of bias as to Moore was the affidavit of Walter Jordan, who stated that he believed the incident resulted in ill-will by Moore against the Jordan family.  Considering the deferential standard applicable to this court's review, the undersigned cannot conclude that the state court's factual findings regarding these two jurors were objectively unreasonable in light of the evidence before that court.

Jordan's allegation regarding Marcus Turner is apparently that Turner was unable to pay attention to the evidence.  After the jury was impaneled but before the trial began, Mr. Turner informed the trial court that he did not feel as if he could focus on the trial.  The

trial judge told him he needed to make an effort to do so because all of the other potential jurors had been dismissed.   There is no indication in the record of any subsequent problems with this juror, and prior to deliberations, Turner responded to an inquiry by the trial judge by indicating that he had been able to focus during the trial and could deliberate.

Finally, Jordan complains of an "emotional outburst" by a juror identified as the "female dressed in red."  The record reflects nothing other than that this juror may have been crying at one point in the trial.  Defense counsel brought this fact to the attention of the judge but did not request that the juror be replaced and did not move for a mistrial.  As the state supreme court observed in its opinion, the record does not show that the emotional state of this juror was so disruptive or prejudicial as to have required a mistrial. There is no indication that this juror was unable to fulfill her oath or that her behavior otherwise rendered the trial unfair.

In short, the record does not support a determination that the Mississippi Supreme Court's rejection of Jordan's claims regarding voir dire, the jury panel, or the jurors who were seated involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, or an unreasonable determination of the facts.  Accordingly, habeas relief is not warranted on these claims.

***Insufficiency of the Evidence (Ground 4)***.  Jordan argues that the evidence was insufficient to convict him because "[t]here was no direct, positive evidence identifying Jordan as the shooter."   Habeas relief is available for insufficiency of the evidence only where the court concludes, considering the evidence in the light most favorable to the prosecution, that *no* rational trier of fact could have found the defendant guilty beyond a

19

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). No particular type of evidence is required in order for a conviction to survive an insufficiency challenge. So long as a rational juror could have found beyond a reasonable doubt that Jordan shot the victim, the fact that the evidence was not, in Jordan's words, "direct" or "positive," is not determinative. Moreover, there was eyewitness testimony linking Jordan to the crime. Joey Netherland testified that he saw the gunman as he fired the second shot and followed him to his vehicle--a vehicle later determined to be Jordan's. Netherland stepped in front of the vehicle in an attempt to stop the driver, forcing the Suburban to go around him. Netherland stated that he saw the driver smile at him as he went by. He later identified Jordan from a photo lineup and made an in-court identification of him. Although Shaghana Wilson could not positively identify Jordan as the shooter, her testimony provided details which linked Jordan to the shooting and which were consistent with those given by Netherland: That the shooter wore a white t-shirt and jeans and left in Jordan's tan Chevrolet Suburban.

In considering Jordan's insufficiency-of-the-evidence claim on direct appeal, the Mississippi Supreme Court cited the testimony of these two witnesses and concluded that a reasonable and fair-minded juror could have found Jordan guilty beyond a reasonable doubt. This determination by the state court did not result in an unreasonable application of *Jackson*. For this reason, habeas relief is not available on ground 5.

***Admission of Defendant's Statements (Ground 6)****.* In ground 6, Jordan argues that his written statements were inadmissible. Although he describes the statements as "strictly exculpatory," he argues that he was nevertheless harmed by their admission because they included a denial by him that he owned a gun, thereby opening the door for

testimony by a pawn shop owner that he had previously purchased a gun. Jordan's position is that the statements were taken after he had declined to sign the Miranda rights waiver and after he had repeatedly asked for an attorney. At the hearing on Jordan's motion to suppress the statements, the trial court heard detailed testimony concerning the circumstances surrounding the statements and concluded that Jordan waived his *Miranda* rights and that the statements were voluntary.

The first statement given by Jordan was taken by Officers Sam Chambers and A.C. Hankins around 1:00 a.m. The entire interview was recorded on tape. Chambers and Hankins testified at the suppression hearing that Chambers read Jordan his rights and that Jordan indicated that he understood them. The officers denied that Jordan had been coerced or threatened in any way.

Officer Lacarus Oliver conducted an interview later that morning. Also present was Officer Milton Williams. At the suppression hearing, Oliver testified that he read the *Miranda* rights warnings to Jordan and discussed the waiver certificate. Jordan responding by saying that he did not want to sign anything but that he was willing to talk to the officers. After the reading of Jordan's Miranda rights, a tape recorder was turned on and the remainder of the interview was recorded. According to Oliver, no threats were made and Jordan was not coerced in any way. Oliver also stated that at no time did Jordan ask for an attorney, and Oliver did not recall Jordan's ever saying that he did not want to talk anymore. Oliver initially testified that sometime during the interview Jordan asked the officers if they thought he needed an attorney. But when asked about this on cross-examination, Oliver reviewed the transcript of the interview and noted that it did not contain any such question by Jordan. Oliver then stated he must have been mistaken

and that he must have been thinking about another interview. Oliver's testimony revealed that at some point Jordan asked whether he could go back to his cell.

Jordan took the stand at the hearing. He testified that at the beginning of the first interview, prior to having his rights read to him, he told the officers that he did not want to talk and needed an attorney. According to Jordan, they responded by telling him that whatever he said would not be used against him and that the interview was "just a procedure" that they had to go through. Jordan testified that essentially the same thing happened at the second interview.

Due process requires that a confession of a criminal defendant be voluntary and not the result of coercion. *Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992) (citing *Miller v. Fenton*, 474 U.S. 104, 109 (1985); *Brown v. Mississippi*, 297 U.S. 278 (1936)). The determination as to whether a confession is voluntary is analyzed by consideration of the "totality of the circumstances surrounding the interrogation." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979). Using the "totality of the circumstances" approach, the state court concluded that Jordan's waiver of his rights was voluntary and that the statements were therefore admissible. Credible evidence established that Jordan received Miranda warnings prior to his statements, that he understood his rights, and that he was willing to give the statements. Furthermore, the trial court listened to the tape recordings of the two interviews before determining that the statements were voluntary. The undersigned concludes that the state court's factual findings were reasonable in light of the evidence presented and that the Mississippi court likewise reasonably applied the Supreme Court's "totality of the circumstances" analysis.

22

***Failure to Amend Indictment (Ground 9)***.  Jordan was indicted for depraved heart murder under Miss. Code Ann. § 97-3-19(b).[5]  He contends that the trial court should have required the state to amend the indictment to charge only manslaughter, rather than murder.  The only argument offered by Jordan in support for this ground is that the indictment "charges the wrong crime and is fatally defective."  He has wholly failed to make any argument that his federal constitutional rights were violated by the failure to amend the indictment.   Furthermore, federal habeas relief is not available for an insufficient or defective indictment unless the petitioner demonstrates that the indictment was so flawed that the convicting court was without jurisdiction.  *Evans v. Cain*, 577 F.3d 620, 624 (5th Cir. 2009).  Where the state's highest court has been squarely presented with the question of the sufficiency of an indictment and has found that it was not fundamentally defective, federal review is foreclosed.  *See, e.g.*, *Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007).  Jordan presented this argument on direct appeal, and the supreme court found it to be "completely devoid of merit."  Thus, this court may not review this ground for relief.

Jordan has also alleged ineffective assistance on the part of his trial counsel in failing to seek an amendment of the indictment and a reduction of the charge from murder to manslaughter.  Jordan has, however, failed to make any argument as to how or why counsel's failure to do so constituted deficient performance.   This claim is without merit.

_____

[5]The indictment charged Jordan with "wilfully, unlawfully, feloniously and without authority of law" killing Davis "by shooting him with handgun, at a time when [Jordan] was engaged in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, to-wit: shooting indiscriminately into a crowd, in violation of section 97-3-19(1)(b) of the Mississippi Code of 1972."  C.P. 6.

***Admission of Photos of Victim (Ground 12) and Ballistics Evidence (Ground 14).*** In grounds 12 and 14, Jordan makes the general contention that the trial court erred in admitting photos of the victim and ballistics evidence. A state court's evidentiary ruling presents no basis for habeas relief unless the ruling runs afoul of a specific constitutional right or renders the trial fundamentally unfair. *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999).[6] Jordan has failed to argue how the admission of this evidence violated his any constitutional rights, and the undersigned can discern none.

***Photo Line-ups (Ground 13).*** The jury heard evidence that Joey Netherland and Carlton Brown identified Jordan from a photo lineup, and these witnesses made in-court identifications of Jordan as the gunman. In ground 13, Jordan challenges the admission of this evidence. However, his argument regarding the photo lineup is far from clear. In his petition, Jordan states that "[t]he trial court erred in admitting the Photo Line-up of Jordan, in violation of Jordan's rights guaranteed under the United States Constitution." The only other explanation for this ground is Jordan's statement that "[t]here is certain law that must be followed when admitting a Photo Line-Up of a defendant. The law was not followed and it was error for the trial court to allow such evidence to be introduced." The undersigned can only assume that Jordan is making the same argument that he made on direct appeal: That the lineup was impermissibly suggestive because of the way the subjects were dressed. Specifically, Jordan complained in his direct appeal that "the Defendant was the only person wearing civilian clothing, including a white t-shirt, and not

---

[6]The Fifth Circuit has described the standard for fundamental unfairness in this context as a high one, affording relief only where the challenged evidence was "the principal focus at trial." *Gonzales v. Thaler*, 643 F.3d 425, 431 (5th Cir. 2011).

wearing an orange jumpsuit or a black and white jumpsuit, and was the only one where you could see that he had on a plain white t-shirt." In its opinion, the Mississippi Supreme Court took issue with Jordan's description of the photo lineup. The court described the lineup as consisting of photos of six individuals, one wearing a black and white jumpsuit, one wearing an orange jumpsuit, and the remaining four wearing civilian clothing. The court rejected the assignment of error without further discussion.

The Due Process Clause protects a criminal defendant against the use of identification evidence obtained from impermissibly suggestive identification procedures. *United States v. Moody*, 564 F.3d 754 (5th Cir. 2009). In order to obtain habeas relief based upon a pretrial identification by photograph, a petitioner must establish that the identification procedure "was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *Herrera v. Collins*, 904 F.2d 944, 946 (5th Cir. 1990) (citing *Simmons v. United States*, 390 U.S. 377 (1968)). Jordan has failed to provide this court with any basis for making a finding that the procedures used in the pretrial identification of him violated due process. The actual photo lineup is not a part of the record before this court, and the trial transcript provides little information as to Jordan's physical appearance and none at all regarding the physical characteristics of the other individuals in the lineup. In the absence of any further details regarding the appearance of the individuals in the lineup, the undersigned cannot say that the state court's rejection of this claim was objectively unreasonable.

**Ineffective Assistance Claims (Ground 19)**

***Failure to Disclose Conflict of Interest (19A).*** Plaintiff states in his petition that

he received ineffective assistance because of his attorney's "failure to disclose a blatant

conflict of interest." At trial, Plaintiff was represented by two attorneys, Akillie Malone and

Antwayn Patrick. According to Jordan's PCR application, he was unaware at the time of

the trial that Malone was involved in a romantic relationship and lived with Officer Lacarus

Oliver, a prosecution witness. Attached to Jordan's PCR application are several affidavits

containing proof of this relationship. Malone and Oliver apparently married one another

within a few months after Jordan's trial.

A threshold issue to be addressed is the proper analysis of Jordan's claim. The

Sixth Amendment right to counsel includes the right to conflict-free counsel. *Wood v.*

*Georgia*, 450 U.S. 261, 271 (1981). Habeas claims alleging denial of the Sixth

Amendment right to effective counsel are normally analyzed under the familiar two-part

test of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland,* a petitioner must

first show that his attorney's performance was deficient. *Id.* at 688. "Deficient" means

that counsel's performance was "outside the wide range of professionally competent

assistance." *Id.* at 690. If a petitioner succeeds in establishing deficiency on his

counsel's part, then he must go on to demonstrate that his attorney's deficient

performance prejudiced the defense such that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694. However, the analysis is altered where a petitioner alleges a Sixth

Amendment violation based upon a conflict of interest involving multiple representations.

In such a case, if a defendant establishes that the conflict of interest actually affected the

adequacy of his attorney's representation, he is relieved of demonstrating *Strickland*

prejudice in order to obtain relief. *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980); *Mickens v. Taylor*, 535 U.S.162 (2002).

The Supreme Court has never, however, expanded the presumption of prejudice doctrine to conflicts other than representation of multiple defendants. This limitation is a logical one: The Supreme Court made it clear in *Mickens* that the *Sullivan* presumption was created because of the "high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice." *Mickens*, 535 U.S. at 175. As the Court went on to explain, "[n]ot all attorney conflicts present comparable difficulties." *Id.* Accordingly, the appropriate framework for analysis of this claim is *Strickland's* two-pronged test.

The undersigned agrees that Malone should have disclosed the relationship to Jordan and that this failure constituted deficient performance on her part. However, Jordan has made no showing whatsoever of prejudice resulting from the relationship or Malone's failure to disclose it.[7] The most likely way in which Jordan could have been adversely affected would have been in Malone's cross-examination of Oliver at the suppression hearing and trial. Yet Jordan has made not a single allegation of any insufficiency in Malone's performance in this regard.

Furthermore, a review of the transcript reveals that Malone cross-examined Oliver ably: At the suppression hearing she questioned him vigorously as to why the tape recorder was not turned on during the time he read Jordan his rights and why Jordan had refused to sign the waiver form, and she challenged the inconsistency in his testimony as

---

[7]Indeed, Jordan has failed even to show any adverse effect. Thus, even if the undersigned were to apply the *Sullivan* presumption, his claim would fail.

to whether Jordan asked the officers whether he needed an attorney. After Oliver's direct testimony at trial, which consisted primarily of a discussion of his interview of Jordan and reading from the transcript of the interview, Malone attempted to establish on cross-examination that Jordan had maintained his innocence during the interview in spite of Oliver's repeated efforts to pressure him into a confession. She also attempted to show that his investigation had been incomplete.

In summary, Jordan has failed to meet his burden to show that *all* fairminded jurists would agree that the state court's decision conflicts with *Strickland*. *See Richter*, 131 S.Ct. at 786. He is entitled to no relief on this claim.

**Failure to Disclose Unethical Activity of Antwayn Patrick and Disbarment Proceedings (19B).** In his PCR application, Jordan complained that after his trial, one of his attorneys, Antwayn Patrick, was convicted on several felony charges and was disbarred. However, Jordan made no effort to link any of this activity to any deficiency in Patrick's representation of him at trial. Jordan has failed to establish that he is entitled to relief based upon Patrick's subsequent criminal prosecution and disbarment.

**Failure to Call Witnesses and to Obtain Readily-Available Evidence that Would Have Exonerated Jordan (19C).** Jordan argues that his attorneys rendered deficient performance in failing to call Randy Scott, James Oliver and Patrick Day as witnesses; in his PCR application, he also identified Jerrorie Haymon as a potential witness. Jordan has provided no evidence concerning the proposed testimony of Scott or Day. Affidavits from Oliver and Haymon were submitted with his PCR petition. In their affidavits, these witnesses state that they were present at the shooting and that Jordan

28

was not the gunman and did not have a gun.   However, in his own affidavit submitted to the state court, Jordan fails to state that he ever informed his attorneys about these witnesses.  To the contrary, the affidavit makes it clear that Jordan assumed little responsibility for assisting in his own defense and relied on his attorneys to discover what they could in their investigation.   Clearly, based upon this evidence, it was reasonable for the state court to conclude that Jordan had failed to establish a *Strickland* violation based upon failure to investigate or call witnesses.

**Failure to Call Defendant as a Witness (19E).**  Jordan contended in his PCR application that he had desired to testify on his on behalf but that his attorney had advised against it.  He also submitted an affidavit to this effect.  Nowhere in the affidavit, however, does he state that he ever informed his attorney that he wanted to testify and what his attorney told him regarding his right.  Furthermore, the trial court informed Jordan of his right to testify, and Jordan indicated that he understood.  The undersigned concludes that Jordan has failed to establish that he is entitled to habeas relief based upon his attorney's alleged refusal to allow him to testify.

**Failure to Object to Improper Comments by Prosecutor (19H).**  Jordan complains that his attorney failed to object to improper remarks made by the prosecutors during opening and closing arguments.  Jordan does not, however, specify in his petition the nature of those remarks.  In his PCR application, Jordan argued that in closing argument the prosecutor make improper statements regarding the time Jordan would serve in prison.  The relevant portion of the state's closing argument is as follows:

> DeeDee Davis's life ought to mean something.  We've heard a lot of references about, oh, he's fighting for his life, he's fighting for his life.  Well, he's charged with

a crime that he committed, and he ought to be convicted of it. The judge is going to impose, once he's convicted, the sentence in this case. He ain't going to die as a result of this. He's going to get sentenced to some time in the penitentiary, which is where people who kill people need to be.

Tr. 685.

This reference to the penalty which Jordan could receive was improper under Mississippi law. *See Marks v. State*, 532 So. 2d 976 (Miss. 1988). The statement was potentially misleading, as "some time in the penitentiary" suggested something less than a life sentence, the sentence which Jordan received. Jordan's claim nevertheless fails because he cannot show a reasonable probability that the result of his trial would have been different had his attorneys objected to the prosecutor's remarks, *see Strickland,* 466 U.S. at 694, much less that the state court's rejection of this claim was objectively unreasonable.

**Failure to Seek a Change of Venue, to Conduct Proper Voir Dire, and to Move to Strike the Panel (19J).** Jordan argues that in light of the community prejudice against him, his attorneys should have sought a change of venue, done more during voir dire to explore the possibility of community prejudice against him, and moved to strike the jury panel. But nothing in the record, including the evidence presented in Jordan's post-conviction proceeding, supports Jordan's claim of widespread community outrage or prejudice. Furthermore, defense counsel individually questioned the prospective jurors who indicated that they had heard about the facts of case. Jordan has failed to show that his attorneys rendered deficient performance in this regard.

**Failure to Object to Improper Use of Witness Statements.** Several times in his petition, Jordan complains about his attorneys' failure to object to the admission of prior

30

consistent statements by witnesses in violation of Miss. R. Evid. 801(d)(1)(B) and (C).[8]

However, the only such statements identified by Jordan in the petition are those made by

Shaghana Simpson.  During direct examination by the prosecutor, Simpson testified,

without objection, that she told law enforcement authorities that she had seen a gun under

the seat of Jordan's vehicle and that Jordan had told her it was a .357.  She had already

testified consistently with this statement.  Jordan's attorneys should have objected to this

improper bolstering of Simpson's testimony.   This ground for relief fails, however,

because of Jordan's failure to establish *Strickland* prejudice from the failure to object.

**Failure to Adequately Present the Law Regarding the Illegality of the Search
of Defendant's Vehicle and to Renew Objections During the Course of the Trial
(19M).**  Shortly after the shooting, Officers Kenneth Wilson, John Newton, and Fred

Coats went to Jordan's home in Pickens, Mississippi.  When they arrived, they saw

Jordan's Suburban parked behind the house.  Jordan's father let them into the house,

where they arrested Jordan.  At the suppression hearing, the officers testified that while

Officer Wilson was escorting Jordan to the patrol car, Officer Newton asked Jordan about

the vehicle.  The officers' testimony as to exactly what Officer Newton said and the nature

of Jordan's response was not consistent.  Some of the testimony indicated that Newton

asked about the keys and that Jordan merely stated that they were in his pocket.  Other

testimony suggested that Newton asked if the car could be searched and that Jordan

---

[8]Miss. R. Evid. 801(d)(1)(B) and (C) provide that a former statement consistent
with a witness's testimony is not hearsay if it is offered to rebut a charge of recent
fabrication or improper influence or motive, or it is a statement of identification of a
person made after the declarant perceived the person.  Jordan contends that the
subject statements were not offered for these purposes and therefore constituted
inadmissible hearsay.

assented. In any event, Newton removed the keys from Jordan's pocket, and the officers conducted a search of the vehicle. A brown leather holster and four cartridges were recovered in the search.

The trial court initially found that Jordan had not consented to the search and that there had been no exigent circumstances justifying a warrantless search. Based upon these findings, the court suppressed the evidence. However, the prosecution filed a motion to reconsider, arguing that the search was reasonable because it was supported by probable cause. The court granted the motion. The court concluded that even though there had been no consent, the evidence was admissible because the search had been incident to the arrest.

Jordan states, without further elucidation, that his attorneys failed to adequately present and argue the issue of the inadmissibility of the items seized in the search. The record soundly contradicts Jordan's characterization of his attorneys' performance. Jordan's attorneys filed a pretrial motion to suppress and a well-argued supporting brief in which they contended that the items were inadmissible because the search was warrantless, there was no consent to the search, and there were no exigent circumstances. They specifically cited controlling federal and state case law in an effort to establish that the search of Jordan's vehicle, after Jordan had been arrested and was away from the immediate vicinity of his vehicle, was beyond the permissible scope of a search incident to an arrest. Jordan's attorneys argued these same points in response to the state's motion for reconsideration after the motion was initially granted, and they renewed their objections at trial. Jordan has wholly failed to identify any deficient

performance in his attorneys' attempts to suppress the items seized in the search, and the undersigned finds none.

**Failure to Object to the Admission of the Cartridges Recovered from Defendant's Vehicle (19N).** Jordan argues that his attorneys should have lodged a specific objection to the admission of the cartridges found in his vehicle on the basis that they did not, according to Jordan, match the caliber of the projectile recovered from the body of the victim. Jordan's characterization of the evidence is inaccurate: Bryon McIntire, a forensic scientist with the state crime lab, explained in his testimony that the projectile recovered from the victim and the projectiles in the cartridges found in Jordan's automobile all had an actual caliber of .357. For this reason, the failure to make the objection proposed by Jordan did not constitute a violation of *Strickland.*

**Failure to Move for Mistrial after Emotional Outbursts by Jurors (19Q).** Jordan takes the position that his attorneys should have moved for a mistrial because of the "emotional outbursts by jurors." The only evidence in the record of anything even approaching an "emotional outburst" is a single incident during which a juror was observed crying. Defense counsel brought the situation to the attention of the court but asked for no particular action or relief. The trial continued without incident. There is absolutely nothing to suggest that Jordan's attorneys rendered deficient performance in failing to move for a mistrial.

**Failure to Object to the Admission of and the Prosecution's Use of Defendant's Unsigned Statements (19R).** Defense counsel filed a pretrial motion to suppress Defendant's statements, in which they vigorously argued that the statements

had been taken in violation of Jordan's *Miranda* rights. When the statements were offered into evidence at trial, they objected. Yet, Jordan attempts to assert an ineffective assistance claim based upon his attorneys' alleged failure to make repeated objections to the use of these statements. Defense counsel presented their argument prior to trial, objected during trial, and preserved the issue for appeal. Nothing further was required.

**Failure to Object to In-court Identifications of Defendant (19T)**. Jordan contends that his attorneys rendered deficient performance in failing to object to in-court identifications of him by Simpson, Newton, Oliver, Wade, Brown, and Netherland. However, he gives no further explanation of the factual or legal basis for this ground for relief. To the extent that he is arguing that the in-court identifications by Brown and Netherland should have been challenged based upon an impermissibly suggestive photo-lineup, that claim fails for the reasons explained *supra* in the discussion of ground 13. In the absence of any specific argument by Jordan on this point, the undersigned has no basis for concluding that the state court's rejection of this claim was objectively unreasonable.

**Failure to Object to Admission of Documents Relating to Gun Purchase (19Z)**. At trial, the prosecution called as a witness William Meredith, a pawn shop owner, in an attempt to establish that Jordan owned a gun. During Meredith's testimony, the court admitted into evidence a "form 4473," which Meredith testified is a form filled out by a potential purchaser of a firearm and then completed by the seller. The document indicated that a person by the name of Montrell Jordan, living at the same address as Petitioner, had purchased a .357 magnum on March 13, 2004. Jordan alleges that his

attorney failed to object to the admission of this document.  This contention is contradicted by the record.  Defense counsel objected and vigorously argued that the document was inadmissible because Meredith had not completed the form and therefore could not authenticate it.

It appears that what Jordan is really attempting to argue is that his attorney should have objected to admission of the document by arguing that the purchase was too remote in time to be relevant.  Jordan has met neither prong of the *Strickland* test on this claim and cannot show that the state court's rejection of it resulted from an unreasonable application of *Strickland*.

***Ineffective Assistance Regarding Jury Instructions.  (19EE and 19P).*** Jordan asserts an ineffective assistance claim based upon his attorneys' failure to object to Jury Instruction Nos. 3, 4, and 5.  The only argument given in support of this ground for relief is that these instructions were confusing and did not clearly instruct the jury on the applicable law.  He also complains his attorneys failed to adequately prepare an instruction outlining the elements of heat-of-passion manslaughter and to present an instruction on the right of Jordan to engage in self-defense.  The undersigned finds these grounds for relief to be completely without merit.  Instruction No. 3 set forth the elements of depraved heart murder as found in Miss. Code Ann. § 97-3-19.  Instruction No. 4 informed the jury that the state was not required to prove that the defendant acted with premeditation or deliberate design or malice aforethought in order to prove him guilty of depraved heart murder.  Instruction No. 5, after again setting forth the elements of depraved heart murder, told the jury that if the state failed to prove beyond a reasonable doubt any essential element of the charge of murder, they could consider the lesser

included charge of manslaughter.  This latter instruction went on to inform the jury that they were to find the defendant guilty of manslaughter if they found, beyond a reasonable doubt, that the defendant did "willfully, unlawfully, feloniously, and without authority of law, kill Dwaeuntre D. Davis, not in necessary self-defence [sic], without malice, through culpable negligence, by discharging a firearm in the direction of Dwaeuntre D. Davis, striking him and causing his death."  Instruction No. 6 defined culpable negligence as "a conscious and wanton disregard of the probabilities of fatal consequences to others as the result of the wilfull creation of an unreasonable risk thereof."  Jordan has failed to identify any deficiency in these instructions that would have required an objection by his attorneys.

Jordan's claim that the jury should have been instructed on self-defense or heat-of-passion manslaughter is patently without merit.  The theory of Jordan's defense was that he was not the shooter.  There was no evidence to support an instruction that he shot in self-defense or in the heat of passion.  In short, Jordan has failed to establish a *Strickland* violation based upon failure to present or object to jury instructions.

**Cumulative Error (Ground 20)**.

Finally, Jordan seeks relief based upon cumulative error.  A writ of habeas corpus may be granted for cumulative error only where the errors are of constitutional dimensions, were not procedurally defaulted, and "so infected the entire trial that the resulting conviction violates due process."  *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992).  Because there is no constitutional merit to any of Jordan's claim, there is nothing to cumulate.

## IV.  <u>Conclusion</u>

Petitioner has failed to establish that the state court's adjudication of any claim considered by it on the merits was contrary to, or involved an unreasonable application of, clearly established Supreme Court law or was based upon an unreasonable determination of the facts.  The remainder of Petitioner's claims are either procedurally barred or fail to raise a cognizable issue for habeas relief.   Accordingly, the undersigned recommends that habeas relief be denied and the petition be dismissed with prejudice.        The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 8th day of August, 2012.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE