IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MONTRELL JORDAN                                                          PETITIONER

VS.                                                 CIVIL ACTION NO. 3:09cv544-DPJ-FKB

CHRISTOPHER EPPS, et al.                                                RESPONDENTS

ORDER

This petition for habeas corpus is before the Court on the Report and Recommendation [13] of Magistrate Judge F. Keith Ball. Judge Ball's well-reasoned and detailed report recommends dismissal of Petitioner Montrell Jordan's claims. After considering the Report and Recommendation, Jordan's Objections [16], and the relevant case law, the Court finds that Jordan's Objections are without merit and that Judge Ball's Report and Recommendation should be adopted as the opinion of this Court.

I.  Background

In February 2007, Jordan was tried and convicted of murder. He received a life sentence. The conviction was confirmed on direct appeal in an opinion written by the Honorable James E. Graves, Jr. *Jordan v. State*, 995 So. 2d 94 (Miss. 2008). The Court also denied Jordan's subsequent Petition for Post-Conviction Relief (PCR). Order Denying PCR [9-17] at 2. Judge Ball's thorough recitation of the facts and procedural history is herein incorporated.

II. Objections

In his Petition, Jordan raised over 60 grounds for relief, none of which Judge Ball found sufficient. Jordan apparently accepts the recommendation as to all but the following five grounds: (1) Defense Counsel's Conflict of Interest, (2) Trial Counsel Was Ineffective for Failure to Object to Prejudicial Statements, (3) Photo Line-Up Was Impermissibly Suggestive,

(4) Admission of Petitioner's Statements Was Prejudicial, and (5) Cumulative Error Mandates a New Trial. Judge Ball correctly addressed all of these issues, but the Court will add the following observations in light of the more specific arguments found in Jordan's Objections.

> A. Ineffective Assistance of Counsel
>
> > 1. Defense Counsel's Conflict of Interest

Perhaps the most troubling aspect of Jordan's trial is his attorney's undisclosed romantic involvement with a key prosecution witness. Jordan raised this claim of ineffective assistance of counsel for the first time in his PCR petition, but the Mississippi Supreme Court rejected the claim, stating simply: "The panel further finds that the claim of ineffective assistance of counsel fails to meet the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and that the application should be denied." Order Den. PCR [9-17] at 2.

Although the state court's adjudication of this ineffective-assistance-of-counsel claim was limited, it nevertheless triggers deference under 28 U.S.C. § 2254(d) "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Claims of ineffective assistance of counsel involve mixed questions of law and fact," therefore this Court proceeds under § 2254(d)(1) to review the state court's determination. *Pape v. Thaler*, 645 F.3d 281, 287 (5th Cir. 2011) (citation and quotations omitted).

As Judge Ball noted, there is a threshold question regarding the applicable legal standard. Habeas claims alleging denial of the Sixth Amendment right to effective counsel are normally analyzed under the familiar *Strickland* test. "For ineffective assistance of counsel claims, a defendant must meet the standard established in *Strickland* by showing that 'counsel's

performance was deficient and that the deficiency prejudiced the defense.'" *Id.* at 288 (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). But an exception exists to *Strickland's* prejudice requirement under *Cuyler v. Sullivan* when defense counsel "was acting under the influence of an actual conflict of interest that adversely affected his performance at trial." *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). In such cases, *Strickland* does not apply, and the petitioner "need not show prejudice in the sense that the outcome of the proceeding would have been different if it were not for his attorney's conflict of interest." *Id.* (footnote omitted)

        a.      *Cuyler* and Clearly Established Federal Law

As an initial matter, Jordan cannot show that the Mississippi Supreme Court's decision to apply *Strickland* rather than *Cuyler* was "contrary to, or involved an unreasonable application of, *clearly established Federal law*." 28 U.S.C. § 2254(d)(1) (emphasis added). "'[C]learly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Regarding conflicts of interest, the Supreme Court has never expanded *Cuyler* beyond conflicts created by multiple representation—a circumstance Jordan has not alleged. *See Mickens v. Taylor*, 535 U.S. 162, 174–75 (2002). And the Court has criticized those circuits that have expanded *Cuyler* to other conflicts of interest. *Id.* (citing with disapproval *Summerlin v. Stewart*, 267 F.3d 926, 935–41 (9th Cir. 2001), upon which Jordan relies).

Although the interpretation of federal law by the courts of appeals does not clearly establish federal law, it is informative to that inquiry. *Earp v. Ornoski*, 431 F.3d 1158, 1182 (9th

Cir. 2005) ("Circuit court precedent is relevant only to the extent that it clarifies what constitutes clearly established law." (citations omitted)). And in this instance, the Fifth Circuit has closely examined whether *Strickland* or *Culyer* applies to conflicts beyond the multiple-representation context. In *Beets v. Scott*, the court, sitting *en banc*, noted that "not all conflicts of interest that affect the attorney's 'duty of loyalty' have the same consequences, and they are not all suited to *Cuyler's* stringent rule." 65 F.3d 1258, 1269 (5th Cir. 1995) (en banc). The court therefore held, "Because the scope of the duty of loyalty with respect to attorney self-interest is inherently vague and overlaps with professional effectiveness, *Strickland* ought to set the constitutional norm of adequate representation." *Id*. at 1271 (limiting *Cuyler* to cases involving multiple representations); *see also Infante*, 404 F.3d at 391 (applying *Cuyler* "because Infante's claim involves his attorney's conflict of interest stemming from multiple representation, rather than a conflict of interest springing 'from a conflict between the attorney's personal interest and that of his client.'" (citations omitted)). Applying *Cuyler* in this circumstance "has not been squarely established by [the United States Supreme] Court." *Richter*, 131 S. Ct. at 786 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). Thus, it was "'not an unreasonable application of clearly established Federal law" for the state court to apply *Strickland*.[1] *Id*.

---

[1]Even if *Cuyler* applied, a petitioner "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348. The Court agrees with Judge Ball's assessment that Jordan has not met this standard. *See Perillo v. Johnson*, 205 F.3d 775, 806 (5th Cir. 2000) ("Under *Cuyler*, the focus is upon whether the actual conflict burdening counsel's performance had an actual and adverse effect on counsel's performance.").

b. *Strickland* Analysis

Jordan challenges the application of *Strickland* but fails to object to Judge Ball's conclusion under *Strickland* that no prejudice has been demonstrated.

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different.

*Richter*, 131 S. Ct. at 791–92 (citation omitted). "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 792 (citing *Strickland*, 466 U.S. at 693). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (citations omitted). Thus, in the § 2254(d) context, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Judge Ball examined the trial transcript in detail before concluding that counsel's performance was not prejudicial under the *Strickland* standard. This Court agrees. Jordan has not shown that it is reasonably likely that the outcome would have been different but for his defense attorney's personal conflict of interest. Therefore, the Court adopts Judge Ball's finding that the state court's application of *Strickland* was reasonable.

Finally, Jordan's request for "an evidentiary hearing regarding the extent of the [counsel's] conflict," Pet'r's Objections [16] at 10, is denied because "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Further, Jordan has failed to show why fact finding is warranted under the heavy burden set forth in § 2254(e).

5

### 2. Failure to Object to Prejudicial Statements

Jordan faults his attorney for failing to object when the prosecution mentioned sentencing during closing argument. The Mississippi Supreme Court rejected the argument, finding that Jordan failed to satisfy the two-prong *Strickland* standard. *Jordan*, 995 So. 2d at 114.

Jordan now objects, claiming that the state's holding conflicts with *Marks v. State* where the court found that closing-argument references to potential sentences are "presumptively harmful." 532 So. 2d 976, 984 (Miss. 1988). The problem with Jordan's argument is that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citation omitted). The question, then, is "not whether counsel's actions were reasonable . . . . [but] whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S. Ct. at 788.

Assuming the failure to object amounted to detrimental performance, Jordan failed to present any prejudice before the state court adjudicating his claims. Jordan's assertion of prejudice is a scant, conclusory statement that "there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Pet'r's Br. Supp. Appeal [9-16] at 145; *see also* Pet'r's Reply Br. [9-16] at 100. Similarly, in his petition for PCR, Jordan's argument for prejudice amounts to little more than an assumption that a contemporaneous objection would have warranted a new trial. Pet'r's PCR Pet. [9-17] at 60. And even in this habeas corpus petition, Jordan still fails to explain how he has been prejudiced, instead suggesting that the Court "presume the statements inflamed the jury to vote for conviction." Pet'r's Objections [16] at 13–14. Due to Jordan's failure to show any prejudice—a necessary element to prevail under *Strickland*—the state court was not objectively unreasonable

in denying his ineffective-assistance-of-counsel claim for the failure to object to the prosecutor's prejudicial statements.

B.  Impermissibly Suggestive Photo Line-Up

Jordan objects that a pretrial photo line-up was impermissibly suggestive. "The Fifth Amendment affords accused individuals due process protection against evidence derived from unreliable identifications which are based upon impermissibly suggestive photographic lineups." *United States v. Sanchez*, 988 F.2d 1384, 1389 (5th Cir. 1993) (citing *Moore v. Illinois*, 434 U.S. 220, 227 (1977)). "Pretrial identification procedures are constitutional unless 'the pretrial identification was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law.'" *Peters v. Whitley*, 942 F.2d 937, 939 (5th Cir. 1991) (citing *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988)). Courts first consider "whether the identification procedure was impermissibly suggestive, and if so, whether there was a substantial likelihood of misidentification." *Id.* (citing *Lavernia*, 845 F.2d at 499). "If the identification procedure is not impermissibly suggestive, the inquiry ends." *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997) (citing *Peters*, 942 F.2d at 939). Thus, to prevail here, Jordan must show "that the state court acted contrary to or unreasonably applied Supreme Court precedent in finding that the line-up was not impermissibly suggestive and that, even if it were, it did not taint [the witnesses'] identification of [Jordan]." *Coleman v. Quarterman*, 456 F.3d 537, 544 (5th Cir. 2006).

Jordan claims to meet this standard because, according to him, he was the only individual dressed in civilian clothing—in particular a plain white t-shirt matching the description of the suspect—and not a prison jumpsuit. But in his direct appeal, the Mississippi Supreme Court

7

rejected Jordan's factual argument, holding that four of the six individuals in the photo array were dressed in civilian clothing. *Jordan*, 995 So. 2d at 112–13. It therefore rejected Jordan's claim that the "photographic lineup was highly prejudicial and requires reversal." *Id.* That ruling obviously turned on the first inquiry of the test—whether the line-up was suggestive—and the court never proceeded to the second inquiry.

"While the ultimate question whether the identification testimony is constitutionally admissible is a mixed question of law and fact that is not entitled to be presumed correct under 28 U.S.C. § 2254(d), the underlying determinations of historical fact that must be made in order to answer that mixed question are properly accorded a presumption of correctness." *Lavernia*, 845 F.2d at 500 (citing *Summer v. Mata*, 455 U.S. 591, 597 (1982)). And in this case, Jordan has not submitted any evidence suggesting that the Mississippi Supreme Court's description of the photographs was error; the actual photo lineup is not in the record. The Court assumes the photos were as described by the Mississippi Supreme Court.

As for the level of suggestiveness, Jordan observes that the shooter was seen wearing a white T-shirt and blue jeans and that he was the only individual so dressed in the photographs. As an initial point, it is unlikely that the photograph showed Jordan's pants because, as he notes later in his Objections, the photographs did not show his build. Pet'r's Objections [16] at 16. Regardless, Jordan has not offered any Supreme Court authority showing that the Mississippi Supreme Court's ruling, based on its factual finding, was objectively unreasonable. That is, he has not shown that the ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786–87; *see also Renico v. Lett*, 130 S. Ct. 1855, 1862

8

(2010) ("'[A]n unreasonable application of federal law is different from an incorrect application of federal law.'" (quoting *Williams*, 529 U.S. at 410)).²

C. Admissibility of Petitioner's Statements

On this objection, Jordan asserts only his disagreement with the Magistrate Judge's Report and Recommendation, and requests a *de novo* review with no citation to authority or additional argument. Though the Court need not consider "frivolous, conclusive, or general objections," this objection at least identifies one of Jordan's specific grounds for relief. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). Having conducted *de novo* review, the Court agrees with Judge Ball that it was not objectively unreasonable for the state court to find that Jordan gave his unsigned statements after a voluntary and uncoerced waiver of his *Miranda* rights.

D. Cumulative Error

Lastly, Jordan objects that "[b]ecause the flaws in this case involve constitutional rights which infected the entire trial, relief must be granted because of cumulative error." Pet'r's Objections [16] at 16. "In [the Fifth Circuit], the cumulative error doctrine only applies when the errors themselves involve matters of constitutional dimension and 'so infected the entire trial that the resulting conviction violates due process.'" *Easley v. Dretke*, 122 F. App'x 124, 131 (5th Cir.

---

²Assuming the identification evidence was admitted in error, Jordan has not shown a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation and quotations omitted). Only two witnesses saw the photo line-up, while "[s]ix witnesses identified Jordan as the shooter in court." *Jordan*, 995 So. 2d at 108. Plus, other evidence of guilt existed. Jordan was at the scene, witnesses testified that the shooter was wearing clothes Jordan possessed, and the shooter fled the scene in Jordan's vehicle as identified by make, model, and a partial read of the license plate. *See Carter v. Grams*, 165 F. App'x 480, 482–83 (7th Cir. 2006) (affirming denial of habeas petition based on faulty line-up in light of other evidence of guilt).

9

2005) (quoting *Derden v. McNeel,* 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc)). And "[m]eritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised." *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (citing *Derden*, 978 F.2d at 1461). Given the Court's denial of Jordan's other objections and the affirmation of Judge Ball's findings, the Court agrees that there is no constitutional violation to cumulate and that this objection is without merit.

II. Conclusion

Based on the foregoing, the Court concludes that the Report and Recommendation [13] should be adopted in its entirety as the opinion of the Court and Plaintiff's petition should be dismissed with prejudice.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 30th day of November, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE